IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JEREMY LAJEUNESSE,

       Plaintiff,

v.                                                   CV 18-0214 KG/JHR

BNSF RAILWAY COMPANY,

       Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on Plaintiff Jeremy Lajeunesse's Motion for Sanctions and Order Prohibiting Defendant's Ex Parte Communications with Treating Doctors [Doc. 108], filed April 17, 2019. Having considered Defendant BNSF Railway Company's ("BNSF") Response and Mr. Lajeunesse's Reply briefs, [Docs. 109, 118], the Court **denies** Mr. Lajeunesse's request for sanctions and an order prohibiting the conduct alleged here.

### I)      BACKGROUND

Mr. Lajeunesse was working for BNSF as a Motorized Track Inspector when he alleges he was injured while driving a Kubota during an inspection on December 20, 2017. [*See* Doc. 1, p. 2]. Specifically, Mr. Lajeunesse asserts that he injured his lower back when "his Kubota struck a consecutive series of 3 large washed-out holes that were about 18" deep." [*Id.*]. According to Mr. Lajeunesse, the Kubota was then pulled from service due to a worn-out suspension. [*Id.*, p. 3]. Mr. Lajeunesse subsequently sued BNSF for negligence under the Federal Employers' Liability Act. [*Id.*, p. 3].

The instant motion involves Mr. Lajeunesse's treatment for his injuries, and the extent to which BSNF may communicate with his treating providers *ex parte*. As recited in the Motion,

1

BNSF has requested Mr. Lajeunesse's treatment records from his various medical care providers using provided Health Insurance Portability and Accountability Act ("HIPAA") compliant releases. [Doc. 108, p. 2]. Mr. Lajeunesse's "counsel has [also] granted Defendant's counsel authority to contact the staff of Plaintiff's treating medical care providers for the *sole* purpose of scheduling depositions." [*Id.* (emphasis in original)]. Mr. Lajeunesse's counsel asserts that this grant of authority was breached by counsel for BNSF, specifically, by BNSF's counsel's paralegal. [*Id.*].

Mr. Lajeunesse explains that BNSF's paralegal "attempted to contact Physical Therapist Isaac Aragon on his personal mobile telephone, and left a message asking for him to return her call." [*Id.*]. By mistake, however, BNSF's paralegal left the message on Mr. Lajeunesse's phone. [*See* Doc. 109, p. 3]. BNSF explains that its paralegal called for the sole purpose of seeking the contact information of one of Mr. Lajeunesse's other treating physical therapists, Patrick Vigil. [*See* Doc. 109-1, p. 2 (affidavit explaining that at one time Mr. Vigil and Mr. Aragon worked at the same office)]. While neither party has provided the Court with a recording or transcription of the actual message BNSF's paralegal left, BNSF submitted evidence showing that the call lasted for a total of 36 seconds. [Doc. 190-2, p. 4]. Apparently after he received this call Mr. Lajeunesse sent a text message back to BNSF's paralegal, putting her on notice that she had the wrong number and informing her that he would be notifying his attorneys. [*See* Doc. 109-2, p. 5].

In his briefing, Mr. Lajeunesse cries foul. He argues that Mr. Aragon's deposition was taken on December 11, 2018, rendering BNSF's attempted contact on February 19, 2019, beyond the scope of the parties' agreement. [Doc. 108, p. 2]. Furthermore, Mr. Lajeunesse asserts that BNSF's counsel's staff "had direct contact with Plaintiff's mental health therapist, Dr. Neuger, because he does not have staff and BNSF wanted to determine whether there were additional

records since the last request." [*Id.*]. Mr. Lajeunesse argues that both types of contact are violations of "federal privacy regulations pertaining to protected health information[.]" [*Id.*, p. 1]. He further argues that such contacts violate this Court's Local Rules; specifically, the form of release that any party claiming physical or mental damages must sign. *See* D.N.M.LR-Civ. 26.3; Local Form 1. Specifically, Mr. Lajeunesse argues that BNSF's contacts with his treating medical providers violates the Form's prescription that:

> THIS AUTHORIZATION DOES NOT PERMIT THE PERSON OR ORGANIZATION LISTED IN PARAGRAPH TWO (2) TO OBTAIN OR REQUEST FROM THE MEDICAL PROVIDER IDENTIFIED IN PARAGRAPH ONE (1) ORAL STATEMENTS, OPINIONS, INTERVIEWS, OR REPORTS THAT ARE NOT ALREADY IN EXISTENCE.

[Doc. 108, p. 2]; Local Form 1, p. 2. Citing these provisions and New Mexico's public policy against ex parte contact between counsel and treating medical providers, [*see* Doc. 108, p. 3], Mr. Lajeunesse argues the Court should enter an Order

> prohibiting further ex-parte contacts between Defendant BNSF and/or its counsel with Plaintiff's treating providers, and order Mr. Aragon and any other witness to be disqualified from testifying unless Defendant discloses all such contact in a manner that would permit Plaintiff to verify the content of any communications and ensure that no improper conversations took place.

[*Id.*, p. 6].

In response, BNSF argues that it has done nothing wrong because it has "never had any *substantive* ex parte communications with Mr. Aragon concerning Plaintiff, his medical information, or this litigation[,]" through counsel or otherwise. [Doc. 109, p. 3 (emphasis added)]. It argues the same is true of Dr. Neuger's office. [*Id.*]. Moreover, BNSF argues that it has never "requested that the medical providers produce records in a manner that would violate [HIPAA] or any state or federal law." [*Id.*, p. 4]. Finally, BNSF argues against the imposition of any sanctions, as Mr. Lajeunesse has failed to show prejudice. [*Id.*, p. 14]. BNSF characterizes Mr. Lajeunesse's

present motion as a "naked attempt to exclude an unfavorable witness[,] [*Id.*, p. 16], as Mr. Aragon's deposition testimony was not favorable to him. [*Id.*]. As such, BNSF argues that Mr. Lajeuensse's Motion is "entirely groundless" and asks that the Court deny all relief requested. [*Id.*, p. 17].

Mr. Lajeunesse's Reply brief claims that any order entered by the Court which does not "unequivocal[ly] … condemn" BNSF's "conduct and arguments" will lead to the rampant and "unfettered attempts to violate privacy laws" by BNSF and other defendants. [Doc. 118, p. 1]. Mr. Lajeunesse then cites to HIPAA for the proposition that "a covered entity may not use or disclose protected health information without an authorization that is valid under this section." [*Id.*, pp. 3-4 (citing 45 C.F.R. § 164.508)]. He then points out that, under HIPAA, "[i]ndividually identifiable health information" is anything that identifies an individual; "[t]hus, acknowledging that an individual is a patient is, itself, a violation of federal privacy laws." [*Id.*, p. 4 (citing 45 C.F.R. § 160.103)]. Thus, Mr. Lajeunesse argues that "[t]he issue before the Court is not whether Defendant had any 'substantive' conversations with Mr. Aragon, Mr. Vigil, or Dr. Neuger, but whether Defendant BNSF and its agents are willing to agree that they will not have unauthorized *ex parte* communications that come within the definition of 45 C.F.R. § 160.103 in the future." [*Id.*, p. 4]. Finally, Mr. Lajeunesse argues that he "does not know how many treating medical care providers Defendant has contacted or attempted to contact" so he cannot know the extent to which he has been prejudiced. [*Id.*, p. 6]. However, due to "the manner in which Defendant BNSF has pursued this case" Mr. Lajeunesse assumes he has been prejudiced. [*Id.*]. He therefore reiterates his request for an Order precluding further ex parte contacts by BNSF and disqualifying Mr. Aragon and other witnesses "unless Defendant discloses all such contacts in a manner that would permit Plaintiff to

verify the content of any communications and ensure that no improper conversations took place." [*Id.*, pp. 6-7].

## II)     LEGAL STANDARDS

The issue is whether BNSF's *ex parte* contacts with Mr. Lajeunesse's treating medical providers violated any privilege, federal rule, or HIPAA, and, if so, whether Mr. Lajeunesse's proposed sanctions are appropriate. *See Franklin v. United States*, CV 12-1167 KBM/CG, 2014 WL 1497835, at * 4 (D.N.M. 2014). The Court's authority to enter such sanctions is generally found under Rule 37(b), which governs the failure to comply with a discovery order, and permits the Court to forbid a party to introduce designated matters into evidence. *See* Fed. R. Civ. P. 37(b)(2)(A)(ii). "Determination of the correct sanction for a discovery violation is a fact-specific inquiry that the district court is best qualified to make." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992).[1] However, "[t]he district court's discretion to choose a sanction is limited in that the chosen sanction must be both 'just' and 'related to the particular 'claim' which was at issue in the order to provide discovery.'" *Id.*

While there is no applicable privilege, Since 1987 New Mexico has recognized a strong public policy in favor of prohibiting *ex parte* "discussion of a patient's medical confidences." *Smith v. Ashby*, 1987-NMSC-098, ¶ 5. This is especially true in the case of his adversary, and the Supreme Court of New Mexico held in *Smith* that "public policy dictates that practices and

---

[1] The parties point the Court to factors that are relevant in determining whether to dismiss a case as a discovery sanction. [*See* Doc. 108, p. 4 (citing *Archibeque v. Atchison, Topeka & Santa Fe Ry. Co.*, 70 F.3d 1172, 1174 (10th Cir. 1995)); Doc. 109, p. 15]. Because dismissal or a default judgment are not part of the relief requested by Mr. Lajeunesse, the Court does not feel constrained to analyze each of these factors. *See Lee v. Max Int'l, LLC*, 638 F.3d 1318, 1323-1324 (10th Cir. 2011) ("In *Ehrenhaus* [v. *Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992)], we expressly stated the factors 'do not represent a rigid test' that a district court must always apply. 965 F.2d at 921. The *Ehrenhaus* factors are simply a non-exclusive list of sometimes-helpful 'criteria' or guide posts the district court may wish to 'consider' in the exercise of what must always remain a discretionary function.... The dispositive question on appeal thus isn't whether the district court's order could or did touch every *Ehrenhaus* base. Instead, it is and always remains whether we can independently discern an abuse of discretion in the district court's sanctions order based on the record before us.").

procedures in litigation should not allow for unnecessary breakdown of the trust and confidentiality embodied in the physician-patient relationship." *Id. Smith* was a personal injury action; however, the New Mexico Court of Appeals applied its rationale to worker's compensation cases in *Church's Fried Chicken No. 1040 v. Hanson*, 1992-NMCA-115, ¶ 21, and *Gomez v. Nielson's Corp.*, 1995-NMCA-043, ¶ 19. Pertinent here, the New Mexico Court of Appeals in *Gomez* clarified what a patient's adversary is entitled to under *Smith* and its progeny. *See Gomez*, 1995-NMCA-043, ¶ 19 ("Insurer may request and receive copies of the treating physician's records, including office notes reflecting Worker's visits to the physician, the physician's assessment of her progress, the treatment prescribed, and the bills related to office visits and treatment…. Additionally, as Worker points out, Insurer may still have informal meetings with Worker's treating physician, so long as the meetings are agreed to in advance and Worker's attorney has an opportunity to attend.").

Under HIPAA's pertinent regulations, "a covered entity may not use or disclose protected health information without an authorization that is valid under this section. When a covered entity obtains or receives a valid authorization for its use or disclosure of protected health information, such use or disclosure must be consistent with such authorization." 45 C.F.R. § 164.508. In other words, "disclosure is permitted if an individual expressly authorizes release of his or her medical information in a valid authorization form." *See Murphy v. Dulay*, 768 F.3d 1360, 1369 (11th Cir. 2014) (citing 45 C.F.R. § 164.502(a)(1)(iv) (allowing covered entities to disclose protected health information "pursuant to and in compliance with a valid authorization"); *id.* § 164.508 ("Except as otherwise permitted ... by [HIPAA], a covered entity may not use or disclose protected health information without an authorization that is valid....")). "Individually identifiable health information is information that is a subset of health information, including demographic

information collected from an individual," and which, among other things, identifies the individual. 45 C.F.R. § 160.103. "A valid authorization, alone, is sufficient to permit disclosure in compliance with HIPAA, so long as 'such use or disclosure [is] consistent with such authorization.'" *Murphy*, 768 F.3d at 1370 (citing 45 C.F.R. § 164.508). "[W]hen an individual executes a valid HIPAA authorization, he waives all HIPAA protection as to the health information covered by the authorization, including the protections against litigation-related disclosures…. Accordingly, no other HIPAA exception for disclosure needs to be satisfied once an individual signs a valid written authorization." *Id.* at 1374.

### III) ANALYSIS

Applying these principles here, the Court will deny Mr. Lajeunesse's request for an Order precluding further *ex parte* communications by BNSF with his medical providers and, accordingly, deny the requested sanctions he seeks – exclusion of Mr. Aragon as a trial witness and exclusion of other witnesses BNSF has had *ex parte* contact with. The Court does so after much reflection and after weighing the above law against the facts of this case. Put simply, the Court determines that the conduct at issue here – where BNSF's counsel's paralegal attempted to reach Mr. Aragon for the purpose of seeking contact information for Mr. Vigil, and additionally, followed up with Dr. Nueger's office for the purpose of seeking Mr. Lajeunesse's medical records – does not rise to the level of an *ex parte* "discussion of a patient's medical confidences" that New Mexico condemned in *Smith*. *See* 1987-NMSC-098, ¶ 5. Mr. Lajeunesse has not provided any evidence that BNSF's counsel or paralegal ever even attempted to have an inappropriate conversation with his treating providers. To the contrary, the evidence before the Court shows that BNSF's paralegal was doing what Mr. Lajeunesse explicitly authorized BNSF to do – communicating with his providers for the purpose of setting depositions. Mr. Lajeunesse's speculation that BNSF has

engaged in substantive discussions with his medical providers in an effort to prejudice them against his case is just that, speculation.

The Court is cognizant that Mr. Lajeunesse argues that the issue before the Court is not whether BNSF had any *substantive* communications with his providers, but whether its communications were *unauthorized* under HIPAA and its implementing regulations. The Court is not convinced. Mr. Lajeunesse ostensibly signed releases for Messrs. Aragon and Vigil, as well as Dr. Nueger, which permitted BNSF to request his records. Nothing in the HIPAA regulations indicates that such requests should be limited to only written documents, or that a patient's adversary is precluded from following-up with the provider to ascertain the availability of additional records. Put another way, so long as the HIPAA authorizations executed by Mr. Lajeunesse were valid, nothing precluded BNSF from contacting his providers and seeking the information allowed by this Court's local forms and New Mexico case law. This is probably why all records received pursuant to a HIPAA authorization under this Court's Local Rules must be made available to all other parties to the action, including the patient. *See* D.N.M.LR-Civ. 26.3(d)(3).

Finally, Mr. Lajeunesse has failed to demonstrate any prejudice arising from the *ex parte* contacts in question. He admits that the prejudice to his case is unknown. [*See* Doc. 118, p. 6]. Moreover, Mr. Lajeunesse has not asked the Court to enter judgment against BNSF as a discovery sanction. Instead, Mr. Lajeunesse speculates that he has been harmed, and asks this Court to fundamentally alter the trial in this case by excluding his own treating medical witnesses. However, the Court does not find this to be a case where BNSF must be instructed to stop doing something wrong – because in the Court's assessment, nothing wrong has occurred. To the contrary, BNSF's actions appear to comply with HIPAA and New Mexico case law on the subject,

by requesting Mr. Lajeunesse's medical records and then contacting his providers to follow-up on records requests or attempt to schedule depositions. Therefore, the Court will not enter an order prohibiting further *ex parte* contacts by BNSF or excluding any witnesses from trial.

**IV) CONCLUSION**

Nothing in this Opinion should be read to permit ***substantive** ex parte* discussions of a patient's medical confidences by his adversary. To the extent that Mr. Lajeunesse becomes aware of actual improper conduct by BNSF after the entry of this Order, he may file an appropriate Motion. However, once Mr. Lajeunesse executed a HIPAA compliant authorization in favor of BNSF, nothing precluded it from seeking his records and bills as permitted by federal and New Mexico law. Likewise, BNSF took reasonable steps to schedule depositions once Mr. Lajeunesse permitted BNSF to contact his providers for that sole purpose. In sum, the Court finds that BNSF did nothing meriting the sanctions requested by Mr. Lajeunesse here. Therefore, Plaintiff's Motion for Sanctions and Order Prohibiting Defendants' Ex Parte Communications with Treating Doctors [Doc. 108] is hereby **denied**.

IT IS SO ORDERED.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE